**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
TIMOTHY J. SULLIVAN
CHIEF MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

November 5, 2025

LETTER TO COUNSEL:

RE:   *Tyrone T. v. Frank Bisignano, Commissioner of Social Security*[1]
      Civil No. TJS-25-0194

Dear Counsel:

On January 21, 2025, Plaintiff Tyrone T. petitioned this Court to review the Social Security Administration's final decision to deny his claim for disability insurance benefits ("DIB"). ECF No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 11 & 12. These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[2] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

Tyrone T. filed an application for DIB on November 16, 2017, alleging a disability onset date of January 5, 2016. His application was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on September 9, 2020, and the ALJ concluded that Tyrone T. was not disabled. On October 25, 2021, the Appeals Council granted Tyrone T.'s request for review of the ALJ's decision and remanded the claim for further proceedings. A supplemental hearing was held before an ALJ on June 21, 2022. The ALJ again denied Tyrone T.'s claim, and the Appeals Council again reversed the ALJ's decision and remanded the claim for further proceedings. A second supplemental hearing was held on November 21, 2023. The ALJ denied Tyrone T.'s claim in a written decision dated January 18, 2024. This time, the Appeals Council denied Tyrone T.'s request for review, making the ALJ's January 18, 2024 decision the final, reviewable decision of the agency.

The ALJ evaluated Tyrone T.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Tyrone T. had not engaged in substantial gainful activity from his alleged onset date of January 5, 2016, through his date last insured of December 31, 2016. Tr. 19. At step two, the ALJ found that Tyrone T. suffered

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. He is therefore substituted as the defendant in this matter. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

[2] This case was originally assigned to Judge Douglas R. Miller. On September 10, 2025, the case was reassigned to me.

from the following severe impairments through the date last insured: "left wrist displaced distal radius fracture status post closed reduction in October 2015 and status post repair of left distal radius malunion with open reduction and internal fixation and bone graft substitute in December 2015; left anterior cerebral artery cerebrovascular accident; alien hand syndrome; seizure disorder; obesity; thalamic syndrome; and cervical spine degenerative disc disease with radiculopathy." Tr. 20. At step three, the ALJ found Tyrone T.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). Tr. 24. The ALJ determined that Tyrone T. retained the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant could occasionally lift and carry 20 pounds; could frequently lift and carry 10 pounds; could stand and/or walk for 4 hours in an 8-hour workday; could sit about 6 hours in an 8-hour workday; could frequently push and/or pull (including handling and using hand controls), handle, and finger with the dominant right upper extremity; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could never climb ropes, ladders, and scaffolds; and must avoid all exposure to hazards. The claimant required the ability to alternate between sitting and standing about every 30 minutes, remaining on task while doing so. The claimant was limited to performing simple 1 to 4 step, routine, repetitive tasks in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line.

Tr. 24.

At step four, the ALJ determined that Tyrone T. was unable to perform any past relevant work. Tr. 37. At step five, relying on the testimony of a vocational expert ("VE"), the ALJ found that Tyrone T. could perform jobs that exist in substantial numbers in the national economy, including office helper, photocopy machine operator, and dental floss packer. Tr. 38. Accordingly, the ALJ concluded that he was not disabled under the Social Security Act. Tr. 39.

Tyrone T. raises numerous arguments that can be considered in two categories: the ALJ's errors in assessing the RFC and the ALJ's errors in evaluating subjective complaints. The Court will address each of the arguments below.

The Court will begin with Tyrone T.'s arguments about the ALJ's RFC assessment. A claimant's RFC represents the most work they can perform despite their limitations. 20 C.F.R. § 404.1545(a). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 SSR LEXIS 5, *1 (July 2, 1996). A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* When evaluating a claimant's RFC, an ALJ must include a narrative discussion describing the evidence that supports the ALJ's conclusions. *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021); SSR 96-8p, 1996 WL 374184, at *7. In doing so, an ALJ must consider all of a claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they

affect [the claimant's] ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019) (internal quotation marks and citation omitted). Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding on the claimant's RFC. *Id.*; *Thomas*, 916 F.3d at 311 ("Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion."). An ALJ need not mention every piece of evidence, so long as they build a logical bridge from the evidence to their conclusion. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Tyrone T. argues that the ALJ failed to address his ability to perform work-related activities for a full workday, on a full-time basis.[3] ECF No. 11 at 6-8. As stated above, SSR 96-8p defines RFC as an assessment of an individual's ability to do sustained work-related activities in a work setting on a regular and continuing basis (i.e. eight hours a day, for five days a week). The ALJ's finding that Tyrone T. could perform the type of work described in the RFC contains an implicit finding that Tyrone T. can work "eight hours per day, five days per week." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). The claimant does not suggest that the ALJ misunderstood or misapplied this policy interpretation ruling. Nor does he point to any evidence that the ALJ failed to consider that might have materially changed the RFC determination. This argument is not a basis for remand.

Next, Tyrone T. argues that the ALJ failed to explain how he determined that Tyrone T. would be able to maintain concentration, attention, and pace for 85 to 90 percent of the workday, considering that he has moderate limitations in concentration, persistence, and pace. ECF No. 11 at 8. At step two, the ALJ discussed Tyrone T.'s limitations with regard to concentrating, persisting, and maintaining pace:

> With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. [T]reatment records indicate the claimant had normal concentration and attention span during mental status examinations (Exhibits 5F at 3; 18F at 10). He was also alert and oriented (Exhibits 3F at 40; 5F at 3; 18F at 10). He was able to progress with goals in speech therapy (Exhibit 4F at 2, 4, 6). The claimant also testified he was able to drive and enjoyed reading and watching television (2020 Testimony). Accordingly, the claimant had no more than moderate limitations in this area of functioning.

Tr. 26.

The ALJ's finding does not suggest that Tyrone T. would have any difficulty maintaining concentration, persistence, and pace for 85 to 90 percent of the workday. And Tyrone T. does not point to any evidence to indicate that he would have such a difficulty, including evidence that the ALJ ignored or discounted. While the VE testified that an individual off task for more than 10 to 15 percent of the time would be precluded from work, the ALJ did not find that Tyrone T. would be off task in this way. Indeed, no medical source opined that Tyrone T. would be off task for any percentage of the workday, and Tyrone T. cites no evidence that would have supported such a finding.

---

[3] The Commissioner does not address this argument in his brief.

The ALJ fairly accounted for Tyrone T.'s difficulties in these areas of functioning by including restrictions in the RFC to limit him to simple, routine, repetitive tasks in a low-stress work environment, with only occasional decision making and occasional changes in the work setting, and with no fast-paced or production quotas typical of an assembly line. The ALJ reached this conclusion in the context of having performed a thorough evaluation of Tyrone T.'s medical records. The ALJ's findings and explanation are sufficient to account for Tyrone T.'s limitations in concentration, persistence, and pace. The Court rejects the notion that the ALJ's decision "defies review" on this point. *See* ECF No. 11 at 11.

Tyrone T. next argues that the ALJ failed to write a narrative discussion setting forth how the evidence supported each conclusion, with reference to specific medical and nonmedical evidence. *Id.* Specifically, Tyrone T. argues that the ALJ failed to support his determination that the claimant required the ability to alternate between sitting and standing every 30 minutes as needed while remaining on task. *Id.* The Court disagrees that the ALJ's narrative discussion was deficient. The ALJ's decision provides a thorough discussion of the claimant's medical history, including the claimant's subjective complaints, treatment records, and medical opinions. An ALJ is not required to annotate their RFC findings, nor are they required to explain line by line how each piece of evidence does (or does not) translate into an RFC limitation. Reading the ALJ's decision as a whole, and considering the evidence incorporated by citation, the Court finds the decision to be a well-reasoned explanation of Tyrone T.'s abilities and limitations relevant to performing work. As for Tyrone T.'s specific concern about the 30-minute sit/stand option while remaining on task, the ALJ explained his reasoning:

> [T]o limit aggravation of pain from the residuals of the claimant's wrist fracture, stroke, thalamic syndrome, and disc disease, the undersigned finds that during the relevant period, the claimant could perform light work as defined by the regulations except . . . could sit about 6 hours in an 8-hour workday; and the claimant required the ability to alternate between sitting and standing about every 30 minutes, remaining on task while doing so.

Tr. 34-35.

The ALJ explained how he determined that the claimant required the option to sit or stand every 30 minutes (while remaining on task), with citation to specific evidence:

> [T]he undersigned has also included a reduction to alternating between sitting and standing about every 30 minutes, while remaining on task because that is more consistent with the breaks the claimant was taking while walking 5 miles in 2 hours (Exhibit 6F at 8) and with exams showing he had some tremors and tended to drag the right leg (Exhibits 5F at 3; 9F at 24). . . . [T]o further consider the claimant's obesity with the leg drag, the undersigned has further reduced the claimant's residual functional capacity to allow for the ability to alternate between sitting and standing about 30 minutes, while remaining on task.

Tr. 35-36. The ALJ's narrative discussion is sufficient for the Court to understand how the ALJ

4

arrived at each conclusion. Tyrone T.'s argument to the contrary is without merit.

Tyrone T. next argues that the ALJ failed to explain how his moderate limitation in adapting and managing himself factored into the RFC assessment, if at all.[4] ECF No. 11 at 15. The ALJ found:

> As for adapting or managing oneself, the claimant had experienced a moderate limitation. The claimant reported feeling anxious and depressed at times because his family always had to watch over him since his stroke (Exhibit 5F at 5). However, he also denied mental health symptoms (Exhibit 5F at 3). The claimant did not receive mental health treatment to help manage stress or other symptoms during this period. Accordingly, he had no more than a moderate limitation in this area of functioning.

Tr. 26.

The ALJ acknowledged throughout the decision that Tyrone T.'s limitations in adapting and managing himself were related to the stress, anxiety, and depression secondary to his concern about burdening his family and needing his family to look after him following his stroke. Tr. 23, 26, 28 & 29. The ALJ explained that because Tyrone T.'s symptoms increased with stress, mental restrictions in the RFC were necessary. In the ALJ's words, these mental restrictions limited Tyrone T. to "simple tasks but particularly to occasional changes in the work setting and jobs which would not require a fast pace or production quotas such as would customarily be found on an assembly line." Tr. 34. The ALJ's explanation is rational and sufficiently clear to allow for review.

Next, Tyrone T. argues that the ALJ failed to follow the Appeals Council's previous remand orders.[5] ECF No. 11 at 16. In remanding the ALJ's previous decisions, the Appeals Council directed the ALJ to address, *inter alia*, the conflict between the opinions of the State Agency physicians who evaluated Tyrone T. *See* ECF No. 11 at 16-17. In the ALJ's decision under review, the ALJ summarized the opinions of State Agency medical consultants S.K. Najar, M.D. (at the initial level) and Bert Spetzler, M.D. (on reconsideration). Tr. 36. The ALJ noted that both sources made their findings more than two years after Tyrone T.'s date last insured. Tr. 35, 36. As it concerns the claimant's argument, the ALJ stated that Dr. Najar opined that the claimant could perform only *occasional* handling and fingering, but that Dr. Spetzler opined that the claimant could perform *frequent* handling and fingering. *Id.* The ALJ found the opinion of Dr. Spetzler to be more persuasive, explaining that

> frequent use of the right upper extremity as described is consistent with the evidence indicating even before treatment the claimant described his symptoms as only moderately severe (Exhibit 13F at 9), denied weakness on the right (Exhibit 4F at 77) and after starting treatment noted symptoms were much less (Exhibit 5F at 2) with his medical sources noting some incoordination but improvement in

---

[4] The Commissioner does not address this argument in his brief.
[5] The Commissioner does not address this argument in his brief.

motor control (Exhibit 18F at 1) and then also describing exam finding as involving a fine tremor and only mild involuntary movements with intact finger to nose coordination (Exhibit 14F at 9).

Tr. 36.

The ALJ explained why Dr. Najar's opinion was less persuasive:

Occasional use of the right upper extremity for pushing, pulling, hand controls, handling, and fingering is not consistent with the longitudinal evidence showing even prior to initiating treatment, the claimant described symptoms as only moderate (Exhibit 13F at 9) and more of a distraction (Exhibit 4F at 90) and denied weakness (Exhibit 4F at 77). It is not consistent with the claimant reporting symptoms were much less after starting treatment (Exhibit 5F at 2; 18F at 10) and with exams showing only fine tremors or mild involuntary movements (Exhibit 14F at 9).

Tr. 35.

The ALJ's explanation for the treatment of the two opinions is rational and supported by substantial evidence, which the ALJ cites in the discussion of each opinion. The Court considers Tyrone T.'s arguments on this issue to be nothing more than a request for the Court to reweigh the evidence, which the Court is prohibited from doing. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, [the Court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.") (citation omitted). The ALJ properly considered all relevant medical evidence and used this evidence in making the RFC determination.

Finally, Tyrone T. argues that the ALJ applied an improper standard in considering his subjective complaints. ECF No. 11 at 22. In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); 20 C.F.R. § 404.1529(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. *Id.* § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate how much the symptoms limit the claimant's capacity to work. *Id.* § 404.1529(c). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id.* To evaluate a claimant's statements, the ALJ must "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p, 2016 WL 1119029 (S.S.A. March 16, 2016). "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r, Social Security Administration*, 983 F.3d 83, 97 (4th Cir. 2020); *see also Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 361 (4th Cir. 2023) (holding that symptoms of major depressive disorder, like those of fibromyalgia, are

"entirely subjective" and ALJs may not rely on objective evidence to discredit a disability claimant's subjective complaints regarding symptoms of depression). In other cases, the ALJ may consider that objective evidence, or lack thereof, along with other evidence. 20 C.F.R. § 404.1529(c)(2). In any case, the ALJ may not rely solely on the lack of objective medical evidence to discredit a claimant's subjective statements. *Id.* A claimant may rely exclusively on subjective evidence to prove how much their symptoms affect their ability to work at the second step of the analysis. *Arakas*, 983 F.3d at 95-97.

The ALJ found that Tyrone T.'s statements concerning the intensity, persistence, and limiting effects of his symptoms are "not entirely consistent with the medical evidence and other evidence of record." Tr. 29. The ALJ then provided an exhaustive eight-page summary of the relevant evidence. Tr. 29-37. At no point did the ALJ state or imply that Tyrone T.'s subjective complaints were rejected or limited because of the absence of objective evidence. Instead, the ALJ found that Tyrone T.'s condition generally improved over time, that he had largely normal or mild examination findings, and that he responded effectively to treatment, all of which was inconsistent with disabling limitations. Tr. 26, 30-37.

Tyrone T. suggests that in considering a claimant's subjective complaints, an ALJ must cite the medical evidence, line by line, that justifies discounting the intensity, persistence, or limiting effects of a claimant's complaints. This is not required under 20 C.F.R. § 404.1529(c)(2). The ALJ properly considered all medical and non-medical evidence, including the claimant's subjective complaints and the opinions of consulting physicians. And the ALJ explained how he reached each of his conclusions. Tyrone T. may disagree with the ALJ's findings, but this Court is not permitted to reweigh the evidence in order to reach a different result.

For the reasons set forth herein, Tyrone T.'s Motion for Summary Judgment (ECF No. 11) will be **DENIED**, and the Commissioner's Motion for Summary Judgment (ECF No. 12) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/
Timothy J. Sullivan
Chief United States Magistrate Judge